**\*\*NOT FOR PUBLICATION\*\***

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLEAN EARTH, INC. and CLEAN EARTH DREDGING TECH. LLC, : : : Plaintiffs, : : vs. : : ENDURANCE AMERICAN INS., : : Defendant. : : | Civil Action No. 15-6111(FLW)  **OPINION** |

**WOLFSON, United States District Judge:**

This action arises from a contractual dispute between proposed intervenor J.T. Cleary, a general contractor ("Proposed Intervenor" or "Cleary"), and Plaintiff Clean Earth Dredging Technologies, LLC, Cleary's former subcontractor, ("Clean Earth" or "Plaintiff") concerning a federally-funded project known as "Maintenance Dredging of Sandy Hook Bay at Leonardo, Federal Navigation Project, New Jersey" (the "Project"). In connection with the Project, Defendant Endurance American Insurance ("Endurance"), acting as the surety, issued the payment bond on Cleary's behalf. In this suit, Plaintiff accuses Cleary of failing to remit over $1 million of unpaid invoices for work performed. But, instead of also naming Cleary as a defendant in this case, Plaintiff asserts its Miller Act contract-based claims only against Endurance, the surety. In the present matter, Cleary seeks to intervene pursuant to Rules 24(a)(2) or 24(b)(2) of the Federal Rule of Civil Procedure, and moves to compel arbitration. In response, Plaintiff opposes Cleary's motion and cross-moves for partial summary judgment of its claims on the merits, which motion is directed against Endurance. Endurance has opposed that cross-motion. For the

reasons set forth herein, Cleary's motion to intervene is **GRANTED**, and the parties are directed to arbitrate this matter. Pending arbitration, this action is **STAYED**, and therefore, Plaintiff's motion for partial summary judgment is **DENIED**.

## BACKGROUND

The Court will only recount facts necessary for the disposition of the current motions. In November 2014, Cleary was awarded a contract from the United States Army Corp of Engineers for a federal public works project that involved maintenance dredging in Sandy Hook Bay at Leonardo, New Jersey. Amended Complaint ("Compl."), ¶ 6. As a requirement of the Project, Cleary obtained a payment bond, naming Endurance as the surety. *Id.* In addition, Cleary also executed a General Agreement of Indemnity in which Cleary agreed to indemnify Endurance. Cleary, the general contractor on the Project, entered into a subcontract with Plaintiff "for performance of processing and disposal of certain material dredged or removed by Cleary as part of the work under" the Project (the "Subcontract"). *Id.* at ¶ 10.

According to Cleary, in September 2014, prior to entering into the Subcontract, Cleary and Clean Earth were involved in a series of negotiations, and the parties ultimately entered into an agreement for the purposes of preparing the bid for the Project.[1] Cleary's Proposed Answer ("Ans."), ¶ 40, 44. Cleary alleges that Plaintiff was well aware that the Project had set forth a short timeline for the completion of all dredging by December 31, 2014. *Id.* at ¶ 42. Cleary further alleges that, based on that understanding, Plaintiff assured

---

[1] As part of its motion to intervene, Cleary submitted a Proposed Answer and Counterclaim to Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 24(c). According to that Rule, the Court is instructed to consider Cleary's pleadings on its motion to intervene. *See* Fed. R. Civ. P. 24(c).

Cleary that it could furnish all necessary submittals and permits on a week's notice. *Id.* at ¶ 43. Relying on Plaintiff's representations in that regard, Cleary submitted its bid for the Project. *Id.* at ¶ 44.

On September 25, 2014, Cleary received notice that it was the apparent low bidder for the Project and was advised to furnish the required submittals in order to be awarded the Project. *Id.* at ¶ 45. A day later, Cleary and Plaintiff revised their previous agreement to include certain provisions that set forth Plaintiff's obligations to provide Cleary with "all information required to assist J.T. Cleary in obtaining timely approvals and permits" for certain sites of the Project. *Id.* at ¶ 48. Cleary alleges that from October 3, 2014 to November 18, 2014, Cleary repeatedly requested that Plaintiff provide Cleary with the approved AUD (Acceptable Use Determination) at the DuPont Grasselli Point site, so that the Project could be formally awarded and dredging could commence. *Id.* at ¶ 50. According to Cleary, "[i]nstead of promptly providing J.T. Cleary with a proper AUD for the DuPont Grasselli site . . . Clear Earth LLC spent months seeking regulatory approval for a different disposal site, one never agreed to by J.T. Cleary, in an effort to obtain a windfall profit in connection with the Project." *Id.* at ¶ 51. It was allegedly not until November 19, 2014, that the AUD was submitted and approved. *Id.* at ¶ 52. Cleary claims that because of the delay on the part of Clean Earth, the Project was not formally awarded to Cleary until November 20, 2014, approximately one month prior to the deadline for the completion of the Project.[2]

Cleary avers that because Plaintiff delayed the permit process throughout the entire

---

[2] Cleary submits that it was compelled to entered into the Subcontract with Clean Earth despite Clean Earth's alleged delays and bad faith, because Plaintiff was the party that submitted and obtained the AUD permits.

3

month of October and into late November 2014, Cleary was "forced to accelerate its work at significant impact and expense in order to meet the deadline to complete the original Project deadline of December 31, 2014." *Id.* at ¶ 56.  Cleary further avers that Plaintiff's delay pushed the majority of the Project work "deeper into the winter season, causing other impacts and inefficiencies" that resulted in significant costs that were not contemplated when the original bid was submitted for the Project.  *Id.* at ¶ 57.  Cleary also accuses Plaintiff of failing to perform certain work under the Subcontract, resulting in further costs, expenses and damages.  *Id.* at ¶ 61.  According to Cleary, the Project was not timely completed, and an extension had to be obtained.  *Id.*  Based on these allegations, Cleary asserts two counterclaims against Plaintiff: (1) breach of contract; and (2) breach of the covenant good faith and fair dealing.

To the contrary, Plaintiff alleges that it has performed all of the work under the Subcontract, totaling the sum of $2,289,905.68.  Compl., ¶¶ 11, 13.  In that regard, Plaintiff maintains that approximately $1.9 million "remains unpaid and portion due from at least January 11, 2015."  *Id.* at ¶¶ 13, 18.  Clean Earth alleges that because Cleary failed to remit payment for the unpaid invoices, Plaintiff filed a claim on the payment bond with Endurance; Endurance, however, "neglected to make the required payment under the [] Bond."  *Id.* at ¶ 16.  This suit followed.

Presently, Cleary moves to intervene as of right, or in the alternative, for permissive intervention.  Further, in the event the Court grants its motion to intervene, Cleary seeks to compel arbitration of Plaintiff's claims and Cleary's counterclaims.  In addition to opposing Cleary's motion, Clean Earth also moves for partial summary judgment on its breach of contract claim against Endurance.  While Endurance opposes Plaintiff's motion,

4

Endurance does not oppose Cleary's motion to intervene, and in that respect, Endurance represents that "in the event the Court grants J.T. Cleary's Motion, Endurance agrees to participate in and be bound by the arbitration between J.T. Cleary and Clean Earth." Endurance's Opp. Br., p. 40.

Because I find that Cleary is entitled to intervene and that arbitration is appropriate, my decisions in this Opinion are confined to resolving Cleary's motions.

## DISCUSSION

### I. Motion to Intervene

#### A. Rule 24(a) Intervention

Federal Rule of Civil Procedure 24 provides in pertinent part: "(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2).

It is well-settled that Rule 24(a)(2) requires the following four elements to be met from the applicant seeking intervention as of right: (1) a timely application for leave to intervene; (2) a sufficient interest in the litigation; (3) a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and (4) inadequate representation of the prospective intervenor's interest by existing parties to the litigation. *Kleissler v. U.S. Forest Service*, 157 F.3d 964, 969 (3d Cir. 1998); *Mountain Top Condo. Ass'n. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 365-66 (3d Cir.

1995); *Development Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 161-62 (3d Cir. 1995). As a paramount matter, to justify intervention as of right, the applicant must have an interest "relating to the property or transaction which is the subject of the action" that is "significantly protectable" and must be "a legal interest as distinguished from interests of a general and indefinite character." *Mountain Top Condo. Ass'n*, 72 F.3d at 366 (internal quotation marks and citation omitted).

In that connection, however, the Third Circuit has recognized that no "'precise and authoritative definition' of the interest that satisfies Rule 24(a) (2)" exists. *Kleissler*, 157 F.3d at 969 (citation omitted). Indeed, there is no "pattern that will easily support or defeat intervention in all circumstances." *Id.* at 970. Instead, in determining motions to intervene "courts should adhere to the 'elasticity that Rule 24 contemplates'" and "may examine pragmatic considerations." *Imable-Mayorga v. Labrie*, Civ. No. 09-3567, 2010 U.S. Dist. LEXIS 84230, at *2 (D.N.J. Aug. 17, 2010) (quoting *Kleissler*, 157 F.3d at 970). "Nonetheless, the polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote. Due regard for efficient conduct of the litigation requires that intervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought. The interest may not be remote or attenuated . . . ." *Kleissler*, 157 F.3d at 972.

Before I analyze the elements, I will review Plaintiff's position to Cleary's request to intervene. In its brief, Plaintiff devotes only three pages to opposing Cleary's motion. Instead, much of Plaintiff's brief concerns its cross-motion for summary judgment against Endurance. As to intervention, Plaintiff argues that because, pursuant to the Bond, Cleary and Endurance are "jointly and severally" liable to make payment, Cleary's presence as a

6

party is not required in this case. In that regard, Plaintiff cites the general legal proposition that a subcontractor-plaintiff may pursue a claim against the surety alone without joining the general contractor or vice versa. That argument, however, is misplaced. Cleary is not seeking to dismiss this action based upon a failure to join a necessary party; rather, Cleary seeks to join it. To do so, the Proposed Intervenor must satisfy the elements of Rule 24(a)(2) (intervene as of right) or Rule 24(b) (permissive intervention). Plaintiff has not advanced any arguments relevant to the elements under those Rules. Nevertheless, this Court has the obligation to perform the appropriate analysis under Rule 24 to determine whether Cleary should be entitled to intervene.

**A.     Timeliness**

Timeliness of a motion to intervene is "'determined from all the circumstances' and, in the first instance, 'by the [trial] court in the exercise of it sound discretion.'" *In re Fine Paper Antitrust Litigation*, 695 F.2d 494, 500 (3d Cir.1982) (citing *NAACP v. New York*, 413 U.S. 345, 366 (1973)). To determine whether an intervention motion is timely, the Third Circuit has listed three factors for courts to consider: (1) the stage of the proceedings; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay. *In re Fine Paper Antitrust Litigation*, 695 F.2d at 500. Here, according to Cleary, Cleary and Clean Earth participated in an unsuccessful, non-binding mediation, which caused Cleary to file its motion to intervene later than anticipated. In any event, Cleary's motion was filed on February 11, 2016, less than three months after the initial conference with the Magistrate Judge, which was held on November 24, 2015. At that time, the Magistrate Judge issued a scheduling order that directed any motion to add additional parties to be filed by February 11, 2016 — the date on which Cleary filed its motion. Tellingly, based

7

on the scheduling order, the parties contemplated the addition of new parties. Moreover, to the extent any discovery has commenced, discovery, and indeed, this case itself, is in its infancy. Therefore, I find that little, if any, prejudice will result in permitting Cleary to intervene. The Proposed Intervenor has satisfied the first prong of Rule 24(a)(2).

**B.     Sufficient Interest in the Litigation**

The second prong under Rule 24(a) requires the prospective intervenor to have an interest "relating to the property or transaction which is the subject of the action" that is "significantly protectable" and must be "a legal interest as distinguished from interests of a general and indefinite character." *Mountain Top Condo. Ass'n*, 72 F.3d at 366 (internal quotation marks and citation omitted). Generally speaking, "a mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene." *Id.* at 366 (citing *Alcan Aluminum*, 25 F.3d at 1185 ("Some courts have stated that a purely economic interest is insufficient to support a motion to intervene."); *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d at 464 (*en banc*) ("It is plain that something more than an economic interest is necessary."). "Thus, the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene." *Id.*

Here, I find that Cleary has a tangible stake in the subject matter of this litigation. The Third Circuit has held that, as a general matter, a surety bond "presents the kind of specific fund that can ground a legitimate interest for Rule 24(a)(2)." *Mountain Top,* 72 F.3d at 366. Indeed, Cleary, as the principal on the payment bond, has a clear legal and legitimate interest in this litigation because if a judgment is entered against the surety, Endurance is likely to seek indemnification from Cleary, pursuant to their agreement.

Intervention allows Cleary to protect its interest in that regard. *See United States ex rel. Frank M. Sheesley Co. v. St. Paul Fire and Marine Ins. Co.*, 239 F.R.D. 404, 412 (W.D. Pa. 2006); *United States ex rel. Jackson Thermo HVAC & Drilling, LLC v. Western Surety Co.*, No. 14-7871(FLW), 2016 U.S. Dist. LEXIS 33363, at *5 (D.N.J. Mar. 15, 2016); *United States ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 937 (D. Md. 2004) (holding that a petitioner seeking to intervene in a suit between its subcontractor and surety "clearly has a 'direct and substantial interest' in the transaction because [the surety], if held liable, will turn to [the petitioner] for indemnification"); *Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of America*, 272 F.R.D. 26, 29 (D.D.C. 2010)(same).

**C.     Impairment of Interest**

Next, the Court considers whether allowing this action to proceed without Cleary would impair its ability to protect its interest. In determining whether a movant's interests will be impaired by an action, courts consider the "pragmatic considerations" or the "practical consequences" of denying intervention. *See Kleissler*, 157 F.3d at 970. On this element, I find that if Cleary were not permitted to intervene, it could be forced to indemnify Endurance for the debt claimed by Plaintiff without an opportunity to legally dispute its liability. This is so because Plaintiff's claims against Endurance sound in breach of contract with Cleary as the alleged breaching party, and therefore, an adverse decision on the merits could arguably impair Cleary's ability to advance its own legal defenses and arguments in a subsequent proceeding. Thus, the practical consequence of denying intervention would be to deprive Cleary of an opportunity to raise arguments and defenses before the adjudication of its own liability to Plaintiff. *Jackson Geothermal*, 2016 U.S.

9

Dist. LEXIS 33363 at *5-6 (holding that "[the principal's] interest in the litigation may, as a practical matter, be impaired by the disposition of [the plaintiff's] claims against [the surety] because if [the principal] is not allowed to intervene, it could nonetheless be forced to indemnify [the surety] for the debt claimed by [the plaintiff] without having the opportunity to legally dispute its liability."); *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987)(finding that legal interest is impaired when in assessing "the practical consequences of the litigation" there is "a tangible threat" to proposed intervenor's legal interest). This type of consequence cannot be cured simply because Cleary has an opportunity to defend against an indemnification claim by Endurance. *See, e.g.*, *Atlantic Refinishing*, 272 F.R.D. at 30 (observing that "[i]t is also insufficient that the petitioner may have additional recourse in the future if it were to defend against an indemnification claim by the defendant."); *Schoenborn v. Wash. Metro. Area Transit Auth.*, 247 F.R.D. 5, 7 (D.D.C. 2007)(observing that intervention was not improper solely because the petitioner had the opportunity to later challenge the award in a suit for breach of fiduciary duty); *Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 158 (D.D.C. 2001). Accordingly, I find that Cleary's ability to protect its interest would be impeded without intervention.

### D.     Adequacy of Endurance's Representation

Finally, Cleary must demonstrate the inadequacy of Endurance's representation in order to intervene as of right. "The burden of establishing inadequacy of representation by existing parties varies with each case." *Kleissler*, 157 F.3d at 972. Nevertheless, the burden always rests with "the applicant for intervention" who must "show that [its] interests are not adequately represented by the existing parties." *Brody v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992) (quoting *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135 (3d cir. 1982) (internal

quotation marks omitted)). However, the Supreme Court has stated that, "[t]he requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972) (citation omitted); *Jackson Geothermal*, 2016 U.S. Dist. LEXIS at *6.

Where the applicant and the existing party have the same ultimate objective, intervention as of right may not be appropriate as a presumption arises that the applicant's interests are adequately represented. *In re Cmty. Bank of N. Va. Guar. Nat'l Bank of Tallahassee Second Mortgage Loan Litig.*, 418 F.3d 277, 315 (3d Cir. 2005) (citing *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976)). In particular, courts generally presume that the principal, in circumstances like in this case, is adequately represented by its surety because they both have the "same ultimate objective," *i.e.*, to avoid liability on the payment bond. *See* 6 Fed. Prac. 3 § 24.03 (noting that a presumption of adequate representative exists if both the movant and the existing party have the same ultimate objective); *XL Specialty Ins. Co.*, 349 F. Supp. 2d at 937 (observing that a per se right for principals "appears to conflict with Rule 24(a)(2)" because the surety is required to provide a good faith defense for the principal). Typically, "[t]o overcome the presumption of adequate representation, the proposed intervenor must ordinarily demonstrate adversity of interest, collusion, or nonfeasance on the part of a party to the suit." *In re Comty Bank,* 418 F.3d at 315.

Here, to establish divergent interests, Cleary presents the arbitration agreement between Clean Earth and itself, and argues that it has a substantial interest in arbitrating the claims and issues brought by Plaintiff. That interest, Cleary maintains, has not been

11

adequately represented by Endurance. Indeed, nowhere in Endurance's Answer or filing did Endurance indicate that it would seek to arbitrate this matter on Cleary's behalf.[3] Moreover, Cleary has asserted separate counterclaims against Clean Earth, which Endurance did not raise. Therefore, I find that Endurance and Cleary have adverse interests, and that Cleary "should not be forced to rely on [Endurance] to raise defenses in a case where its own liability is at stake." *Atl. Refinishing*, 272 F.R.D. at 30 (finding that a principal's interest in arbitration sufficient to show adverse interest since the surety has not raised it as a defense). Based on these circumstances, under the Supreme Court's "minimal burden" standard, I find that Cleary would not be adequately represented by Endurance.

Having satisfied all four elements necessary for intervention under Rule 24(a)(2), Cleary is granted the right to intervene as of right.[4]

---

[3] Plaintiff does not argue that Endurance cannot, pursuant to the Subcontract, independently move to arbitrate Plaintiff's claims. However, whether Endurance has the right to seek arbitration under the Subcontract is of no moment — Endurance has not sought to do so even if it has that right. In that regard, Cleary would effectively lose its right to arbitration should the merits of Plaintiff's claims ultimately be litigated in this case.

[4] Although I need not reach this issue, I find that Cleary is also permitted to intervene under Rule 24(b). According to Rule 24(b)(1)(B), "[o]n timely motion, the court may permit anyone to intervene who: has a claim or defense that shares with the main action a common question of law or fact." Rule 24(b)(3) further provides that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *PA Prison Soc. v. Cortes*, 622 F.3d 215, 232 (3d Cir. 2010). Here, there is little doubt that Cleary's proposed defenses and claims share common questions of both law and fact with Plaintiff's suit against Endurance, such as whether Clean Earth completed its work on the Project to the satisfaction of the Subcontract; and whether Cleary owes any outstanding payment under that agreement. As to prejudice or delay, I have no basis to find that permitting Cleary to intervene would result in unduly delay or unfairly prejudice the adjudication of Plaintiff's rights. Rather, it would serve the interest of judicial economy to resolve the parties' claims in one action. Accordingly, even if Cleary would not be entitled to intervene as of right, Cleary would be permitted under Rule 24(b) to intervene.

## II.  Motion to Compel Arbitration and to Stay Proceedings[5]

The Federal Arbitration Act's ("FAA") purpose is "'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.'" *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172 (3d Cir. 2010) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). To achieve this end, the FAA provides that a contract provision that contains an arbitration clause "shall be binding, allows for the stay of federal court proceedings in any matter referable to arbitration, and permits both federal and state courts to compel arbitration if one party has failed to comply with an agreement to arbitrate." 9 U.S.C. §§ 2, 3, 4. Collectively, those provisions of the FAA manifest "'liberal federal policy favoring arbitration agreements.'" *Khazin v. TD Ameritrade Holding Corp.*, 773 F.3d 488, 493 (3d Cir. 2014) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Therefore, "'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .'" *Maddy v. GE*, 629 F. App'x 437 (3d Cir. 2015) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25).

When a district court is presented with a motion to compel arbitration, it must answer the following two questions: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 525 (3d Cir. 2009). When performing this inquiry, the court applies "ordinary state-law principles that govern the formation of contracts." *Kirleis v. Dickie, McCamey & Chilcote*, 560 F.3d

---

[5]  To reiterate, Endurance does not oppose arbitration, and it has agreed to be bound by the decision of the arbitrator should arbitration proceed.

13

156, 160 (3d Cir. 2009).

Here, the Subcontract contains the following arbitration clause:

### § 6.2 ARBITRATION

§ 6.2.1 Any claims arising out of or related to this Subcontract, except claims as otherwise provided in Section 4.1.5 and except those waived in this Subcontract, shall be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 6.1 [mediation provision].

Subcontract, § 6.2.[6]

As to the first factor, I note that Plaintiff has not argued that the arbitration agreement is invalid or that it did not agree to arbitrate voluntarily. Indeed, in this case, Plaintiff seeks to enforce the Subcontract against Endurance. And, in that regard, nowhere in the Complaint does Plaintiff challenge the validity of the Subcontract in any way. More compellingly, Plaintiff participated in mediation consistent with § 6.2 of the arbitration provision prior to filing this suit. Absent any basis to find invalidity, I conclude that Cleary has satisfied the first factor – that the parties entered into a valid arbitration agreement.

Next, with respect to the scope of the arbitration agreement, the language of the arbitration clause at issue is certainly broad, because the use of the phrases "arising out of" or "related to." Indeed, "when phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction." *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000). Clearly, the scope of the arbitration provision, here, is sufficiently broad to encompass Plaintiff's breach of contract claims and Cleary's counterclaims that are asserted under the same legal and factual bases. Those claims are directly related to the Subcontract and its terms. Accordingly, I find that Cleary has

---

[6] None of the exceptions set forth in the arbitration provision applies in this case.

satisfied both factors to compel arbitration.

Finally, I note that Plaintiff has not taken a position as to whether arbitration is appropriate. Rather, Plaintiff asks this Court to deny Cleary's request to stay this case against Endurance pending arbitration, while conceding that the Court has the discretion to impose a stay in that context. Plaintiff reasons that it should be entitled to litigate this matter against Endurance even if a separate arbitration proceeding is ongoing. I do not agree. It would be a waste of the parties' resources, and more importantly, it would not promote judicial economy to permit both proceedings to occur at the same time, particularly since the issues raised in both forums are substantially similar. Accordingly, I will exercise my discretion to stay this matter pending arbitration.

## CONCLUSION

For the foregoing reasons, the Proposed Intervenor's motion to intervene and motion to compel arbitration are **GRANTED**. Pending arbitration, this matter is **STAYED**. Plaintiff's motion for partial summary judgment is **DENIED**.

Dated:  September 28, 2016                                  /s/      Freda L. Wolfson
                                                             Freda L. Wolfson, U.S.D.J.